Good morning, Your Honors. May it please the Court, Mira Hashmal, Counsel for Appellants, I'd like to reserve five minutes for rebuttal. The District Court erred in denying the anti-SLAPP motion in this case. The state tort claims for slander of title and interference are based on lawyer letters, quintessential protected litigation conduct. Is it your position that any letter from a lawyer is protected by litigation privilege? No, Your Honor. There's really two standards. If it's relating to pending litigation, it's got to be directed to an interested party and it's got to be in furtherance of the goals of the case that's met here. What the District Court lost sight of is that some of these letters were sent to active entities involved in the business relationship, auditors, accountants, lenders. Well, let me unpack that a little bit because I want to leave aside the question whether they were demand letters and go to the sort of related to the litigation prong that you've just described. These letters are very long and they go through a whole litany of facts and what these other, you know, what people allegedly did wrong and why they shouldn't do business with them. They also happen to attach the complaint that was filed. If they had not attached the complaint or mentioned the lawsuit but simply said, these are bad folks and here are 400 facts about why they are bad folks and you shouldn't do business with them, would there be a litigation privilege? Yes, Your Honor. I don't think it would. Why? Because it would clearly reflect the ongoing controversy between the parties as to the pending Lincoln Studios matter. I mean, at issue was this joint venture relationship that had gone bad. NMS believed it had rights in the property. AUW believed it didn't. These letters were intended to inform interested third parties of that ongoing dispute. So once you sue somebody for bad acts, you are then basically immune from being able to sue for anything else that you do relating to unrelated parties, it sounds like. Well, what the litigation privilege protects is communications to interested parties. So it's not Joe Schmo. It's entities or individuals that have an interested relationship with the parties that are in battle and litigation. That standard was met here because these letters, as I said, went to accountants, auditors, lenders. And NMS said, look, AUW is keeping us in the dark. Our business relationship has gone bad. We need basic financial information, accounting information. And the letters conveyed that request for information and provide a lot of background, copy AUW's counsel, reflect the litigation. I mean, it's all in furtherance of this goal. And if you look at the underlying Lincoln Studios action, some of the claims went to directly those same issues. The lack of transparency, the lack of accountability for capital injections and expenses, tax problems. So the district court erred in not looking at this as pending litigation, which makes it absolutely privileged. But in connection with the letters related to prospective litigation, the district court also erred there. The letters went to exactly who an attorney would communicate with if its client's business partner was selling its assets out from under it. And that's what NMS believed. And so it communicated with prospective lenders, title insurance companies, the prospective buyers, and the listing agent to say, hey, it's heavily contested that AUW can sell these properties out from under us. That is the point of the Lincoln Studios litigation, to protect NMS's interest in those properties. And our rights are at stake. This is not a circumstance where there are vague statements and there's no concrete dispute. This is not a situation where you're just putting stuff out there, but you aren't tying it to potential claims and imminent proposed litigation. The standard is met here because, in fact, when NMS learned of the sale, it brought suit against the new buyers. Now, the district court accepted AUW's argument that because not everyone was sued, somehow there's no prospective litigation privilege. That's just contrary to California law, and for good reason, right? I mean, we as lawyers write these letters so that our clients don't have to go to litigation. We tell interested third parties, there's a dispute, my client has a claim, these are the harms, my client will suffer. But they weren't actually, well, they were sort of vaguely conditional claims against the recipients of the letters. They talked about the claims against the parties to the litigation, but they really didn't make specific demands or else I'll sue you. They were more like warnings. They were cease and desist letters, what I call them. I mean, the case law kind of blends demand letters with cease and desist letters, but they're a little different. I mean, demand letters is I slipped and fall, you owe me $100. Cease and desist is you're going to air, for example, a documentary about me that I haven't cleared under my contract. It's one of the big cases in California. But a cease and desist letter would mean I've got a claim against you, stop, you're violating. This wasn't even that. This was there's a controversy brewing over here, and you other people who are peripheral. That's why I say it's a warning. Look out because we've got this claim over here. It's not cease and desist. It's saying that there's a controversy. We believe these properties are contested as far as authorization to sell. We understand that our business partner is going behind our back and trying to market and sell them. But what the letters didn't communicate, Counsel, is that there was any ongoing claim or even anticipated claim against these peripheral folks, right? You hadn't gotten there yet. As I say, why is it incorrect for me to think of those as warning letters? They're shots across the bow, aren't they? They are identifying concrete concerns and interests. There's no I'm going to sue you overtly because the point is here you're on notice now. I've got these claims and interests. Against somebody else. Claims, right, against somebody else. And if you facilitate that party's continued path to interfere with my rights in the property, you're potentially going to be liable and I will pursue in good faith those claims. And that's why the litigation privilege applies because you need to be able to advocate for your clients in circumstances when you are aware of third parties that may be interfering with their clients' rights. And then you advocate to that issue with regards to something that's active in controversy. The district court was correct. The first prong was met. This is clearly protected conduct. But it erred in connection with the second prong because it somehow suggested that because we didn't sue everyone, we didn't have a privilege. Well, on the second prong, the district court found that there were issues of facts that wasn't appropriate to dismiss under anti-SLAPP. Yes, Your Honor. And I submit the district court took the language from Action Apartments and stretched it beyond its purpose. That case involved an ordinance which said per se any communications regarding prospective eviction would be outlawed. And what the court said in looking at the ordinance is it goes too far because a litigation privilege is only going to apply to pre-litigation communications when they're in contemplation in good faith of litigation that's imminent, right? So some of those eviction notices will be... But wouldn't you have to find that in fact these letters were in contemplation of litigation in good faith? Yes, you do. And I think the record shows it. That's an issue of fact. It's just looking at context. It doesn't create a trial on the merits in order to determine litigation privilege in every case. And there's reason for that, right? I mean, the SLAPP statute is intended to allow the early resolution of cases that are based on protected conduct. They're factual in this general sense. It's intended, as I understand, as a California... I'm not a California-based lawyer, so I'm not as familiar with this. But as I understand what the California Supreme Court said, it's designed to weed out frivolous cases, right? Well, it's very broad. What it's intended to do, the SLAPP statute is intended to allow early resolution of claims based on protected conduct. But then you've got the litigation privilege, which is robust and is supposed to be exercised in all cases of doubt because of the strong policy and allowing open advocacy in the courts. And here, these letters, based on the undisputed circumstance in which they were sent, the recipients, their contents, and the conduct of NMS imminently filing litigation as soon as the transaction it was afraid of occurred, are all factors that support application of the privilege.  Most of them were, and all of them were provided to opposing counsel. So they answered him questions, no? Not everyone attached the complaint, but every letter referenced the litigation. Some of them attached multiple pleadings in the action, and some of them did not. But it was very transparent. We're an active litigation. We believe we've got rights to these properties. They're pursuing it, we think, in a transaction involving you in violation of our rights. And that's what the factors are. Aronson says you don't have to sue. Direct TV, in that instance, there were a number of letters. Only 5% resulted in lawsuits. Because the issue is good faith at the time the letter is sent. This is not baseless puffery sent to news organizations without any genuine intent to pursue a case, like the Dickinson case. But in this circumstance, active action on behalf of NMS to pursue its rights when, in fact, what they felt was an unauthorized sale went forward. And so, respectfully, that's where the district court lost sight of the litigation privilege and how robust it is. Every aspect's a little factual, right? I mean, to apply the privilege, you have to look at, is it in furtherance of the case? You're going to be considering the conduct, and you're going to be considering the case and the connection between the two. That's not going to convert this issue into something that requires more than just a call on the law by the court based on the undisputed record. And for those reasons, Your Honors, I submit that the order should be reversed and the matter should be remanded with directions to slap those claims. You may save the rest of your time for rebuttal, which is, I gather, what you're headed towards. Thank you. Thank you. Good morning, may it please the Court. James Fogelman of Gibson Dunn, representing the respondents. Let me just start off by answering the question you asked earlier about whether all the letters attached to the complaint know. In fact, one of the key letters, if not the key letter to Estill, the broker, did not attach the complaint and mostly threatened the claim against Estill. I know that the Court is thinking of this as a warning, but when you hear someone say, I will see you for half a billion dollars, it's more than just a warning, it's a severe threat. And the evidence in this record is it was that threat and that threat alone which caused the interference and the slander of title. To be clear, I appreciate that I read the letters, but they don't purport to say we've got a claim against you, recipient, right? Instead, they're warnings. If you want it to be a threat, I can use the word threat. But isn't that right? Do any of them purport to indicate that they've got a claim currently against any of the recipients? No, they're threats that if you participate in any transaction with these people at all involving these properties, we will sue you for half a billion dollars. Okay, that's how I read them. Yeah, it's a warning or a threat of a massive liability. And for people who are receiving these, it's a game changer. If you're a title insurance company and you're going to get $10,000 to participate in some transaction, if you're even asked to be involved, you're not going to get involved in that when you're going to potentially lose half a billion dollars. So that's just not going to happen. And in this record, that's exactly what happened. In Mr. Flowers' declaration, which is in the record, he says that the litigation was irrelevant to the transaction. The title insurer at issue had decided to insure the title regardless of litigation because the contract authorizes the sale in the JV agreement. There's a specific section in 8.1. And the threatened letter, and only the threat itself of half a billion dollars, caused the title insurer to stop participating. But when you look at the other issue, which is did they carry it out, there's some reference to what they did as soon as the transaction went through. In fact, they did not file suit against a single recipient of a single letter, not one. They only filed suit against the buyer after the sale, but they didn't bring the suit they had threatened. They did not sue for interference with the JV agreement. They did not sue for interference in property rights, of which they have none. They brought assault claims and trespass claims and a claim of an unfair sale process that they paid too little. That's not what was in the letters. That's not what was threatened. And it's not a person who received the threat. They threatened every conceivable major title insurance company in America, the broker who participated in the transaction, and then didn't sue anybody, including the broker who participated in the transaction. It's the definition of a hollow threat. And that is, in fact, one of the main reasons the trial court was correct. And I think the court down below made even a more kind finding than he needed to because he found there were factual issues. But if you look at the record, a factual issue depends on evidence. And no admissible evidence was submitted by the appellant on the issue of a good faith belief and intention in your claim and your intent to bring that claim. None. Everyone knows the rules when you bring a slap motion. You have to produce evidence. And what they submitted was judicial notice requests of filings in another court that had been found pejorious or not on point of the issues that our client submitted. Evidence in the form of admissible declarations. These were forgeries. There was perjury. There was destruction of evidence. And this was all part of a fraudulent and extortionist scheme to gain access to the joint venture. One more point. Go ahead. Yeah. I want to ask you when you're finished discussing the sort of warning letters or whatever threatening letters, however we want to describe those, the other prong, the question of whether these letters were related to the existing lawsuit or at least the ones that attached the complaints, is that enough to make them related to that litigation? No. I think the action case deals with that where they separated out two conduct. They said part of the conduct was an unlawful detainer case. That's going to be privileged. And part of it is this eviction notice, which is not. That's an illegal letter that's just a scatter shot to everybody. In this case, even if you had mentioned the litigation in every letter, that wasn't really the purpose of the letter, and that wasn't the gravamen of the letter, and that's not the basis of the claims. The basis of the claims is the threat. The extortionist threat is part of a larger extortionist threat. And I think if you look at that part, and I'd be happy to explain why that is not privileged conduct, even referencing that, that by itself is not, as you said earlier, an immunity to make any other fraudulent or extortionist threats in the same correspondence. Can you rely on Flatley or however that's pronounced? Flatley is one of the cases because Flatley says you've got to look at whether it's either conceded or conclusively established to be illegal conduct. That puts it outside of the statute. This is really not what the statute is designed to prevent. This statute is designed to participate, to create an atmosphere where people can feel free to participate in public forums, that is a court or a legislature. It is not to protect illegal actions by people who are committing crimes. And we have submitted evidence, not just overwhelming evidence, but uncontradicted evidence that this was a forged document supported by other forgeries, destroyed evidence related to those forgeries in an attempt to commit mail fraud, wire fraud, and good old-fashioned extortion. That's what we're talking about here. That's the conduct. That is not intended to be protected, and Flatley is not protected by the anti-slap statutes in California, nor should it be. That's the opposite of what we should be encouraging here, and the statute does not say otherwise. The other cases I would have you look at when it comes to the relationship to prior litigation, this is not a case where the claim is based on any reference to prior litigation, and the sale was not taking place as a result of that litigation. Litigation was still pending on the appeal, and the cross-complaint was pending down below. This transaction was going forward outside of litigation. I picked up my pen because you said the other case I'd have you look at, and I'm ready. Sorry. Me too. There are several cases. I want to tell you one, the Cosby case, where they sent letters to people who were potentially going to threaten publication of something, but they scattershot it to anybody who might publish. They didn't actually bring any suits. This is a threat and litigation issue, and they said that's not protected conduct. Their Jackson case is another one that was involving Michael Jackson, and in that one they had given a press conference about their allegations, and it wasn't even a question of illegality. In that case, it was a question of whether you can just broadcast your allegations to everybody, and the answer in that case was no. You have to have someone with sufficient interest in the litigation. None of the people who received the letter had any interest in litigation, and none of the people in receipt of the letter were, I guess you would look at the Jackson test, able to constructively help the litigation. Well, she says they were, so could you respond to her argument that the recipients all were interested in the litigation because the asset was, you know, they were concerned that the asset was going to be resold? I'll answer it in two ways. First, the lawsuit by the then plaintiff, now appellant, was not about property sales. It was not about property ownership. It was about an interest in a joint venture that owned property, and the ownership interest that they had in the joint venture would remain the same whether it owned property or cash from the sale of property. Or the process. So it wasn't really about property at all. Their claim was about ownership of the joint venture. And secondly, the people who submitted declarations, that doesn't include anyone on their side, identified that it was not relevant to them that there was a pending lawsuit. They were willing to go forward for the sale outside of it. It was the threat in the letter of half a billion dollars merely for participating in issuing title insurance that caused them to drop out. They did not care what happened to the litigation. That's in the Flowers Declaration in the record. And there's no declaration of Mr. Schechter or anyone from NMS, no declaration from Mr. Miller or anyone from his firm saying that there was a viable claim they intended to bring. And as the court down below found, the fact that they sued none of these people is further evidence of at the very least a factual dispute even if you credit the judicial notice request that they submitted. But keep in mind, as far as the illegality, there's literally no admissible evidence. And as to the intent to sue or a good faith belief in the claim, there's no admissible evidence at all. So saying there's a factual dispute is giving more credit to the appellants than they're entitled to. And even if there was a factual dispute, that's enough for the trial court to correctly deny the motion. We're talking about two claims out of six here. That's what we're talking about. Interference with contract or prospective advantage and slander of title. They never had any interest in the properties. They only had an interest in the joint venture. The purpose in sending the letters and making the threat was to make it seem that they had interest in the title to the properties and to further this extortionist threat, as the court held in its motion to dismiss ruling, to prevent the now respondents from being able to sell the properties and then being forced to sell it to the extorting party. That was the purpose of these letters. It's all part and parcel, as the trial court found. They're also relevant to the RICO claim that was allowed to proceed. These claims are additional claims, but they're viable and not barred by the statute that we're talking about here for the reasons that we've addressed. Mostly I've identified the legal standards here for the crime as to why it falls outside the statute. There are about 20, but the three that matter most are the Hobbs Act, that's against extortion, and the federal mail and wire fraud statutes, 18 U.S.C. 1341 and 1343. Again, evidence of these forgeries and evidence of this fraud was submitted in the form of admissible declarations by both recipient witnesses and experts, and no admissible evidence was submitted either as part of the motion or in rebuttal. So those things of illegality remain unrebutted. As far as the threat of future litigation, I think this really does fall in the action type case where you're just going to tell everyone you're going to evict them, and they said you can't do that. You're allowed to look at this, even if it's related to litigation, that could be threatened, and in that case, I think they did bring unlawful detainer cases. They said you can't just scattershot letters that are illegal, and those were illegal in that statute. That was the new statute in Santa Monica outlining those kinds of eviction notices. In our case, it is the statutes that I referenced and other California appeal codes that make the conduct, both underlying the forgery, the perjury, the destruction of evidence, and on top of that, that is, the sending of these letters as part of an extortionist scheme, all of it is illegal and falls outside the statute. But with respect to the threatened litigation, I want to make two additional points. One is that in addition to the fact that they didn't have a good faith belief, that's the only evidence in the record. There's also another exception that isn't really addressed, and I'll just point it out, that if it's in furtherance of, if the scheme is part of a destruction of evidence type situation or an alteration of evidence, in order to prevent the person from using the evidence, that also is an exception to the litigation privilege in California. And while that wasn't addressed by a trial court down below, it is an additional ground worth considering here because the evidence of destruction of evidence is unrebutted. I mean, again, there was no one who said otherwise, even in the judicial notice request that they submitted, but that's not admissible. And the purpose in destroying the evidence and in creating the forgeries was to prevent them from either using the joint venture agreement in the trial court or using the joint venture agreement as part of the sales. And the letters submitting these forgeries and referencing these forgeries and this illegal scheme was all part of that process. So there are at least three or four different grounds why the trial court's decision was right and should be affirmed. If you happen to answer any of the questions, otherwise I'd submit. All right, I don't believe we have any additional questions. Thank you. And, counsel, I believe you've retained quite a bit of rebuttal time. Thank you, Your Honor. I think I'm going to need it. I'm going to start with the representation that there wasn't an interference claim filed in the Newbuyer lawsuit. I would direct the court's attention to the record. ER 558 is an interference claim in the Newbuyer lawsuit, so that's just not true. With regards to who was sued and why, the individuals who received the letters who did not then participate in what NMS believed was an unauthorized sale weren't sued. I mean, Aronson shows that if circumstances no longer make litigation fruitful for your client, you're not forced to bring a lawsuit you don't think is useful just to preserve your privilege. Did you only sue the Newbuyer? The Newbuyer and AEW and related actors in connection. Well, that's what I'm asking. What related actors? In connection with the Newbuyer transaction, they essentially went in sort of by force to remove NMS. Which entities, please? It was Dennis Wong, who was a principal of the Newbuyer entity, and other individuals who were engaged in what was essentially a false imprisonment scenario, as well as the AEW actors. So anybody from a title insurance company, anybody who arranged financing, anybody like that, any of those peripheral members? There was no financing. AEW self-financed the transaction. There was no title insurance, so there were no title insurance entities sold. So it sounds like the new litigation was against the Buyer. Yes, the Seller. And individuals involved in what was an unauthorized transaction from NMS's perspective. Because there was no lender, there was no lender sued. I'm just hearing you identify the Buyer and Seller. Is that right? It's not a trick question. I just want to make sure I'm not missing anybody. That's right. All right. And related sort of agents on their behalf. But no distinct entities. Agents are those two principal entities. Exactly. Thank you. Yes. And the reason the individuals that received the letters weren't sued is because they weren't involved in the transaction. And either were entities of the same type, like a lender or a title insurance company. So again, what they're asking you to do is to eviscerate the privilege because a lawyer, upon consideration of the facts when the dust settles, elects not to sue entities that weren't involved in the harm. That's kind of what we're supposed to do, right? In connection with the illegality prong, Flatley is a very narrow exception. It only applies when there's uncontroverted legality, one. And two, when the illegality is the subject of the claim. There are a lot of accusations about NMS's conduct in connection with the underlying case. But the letters themselves aren't forgeries, aren't spoliation. They're litigation letters. No, but it has to – it may bear on this sort of related to – leaving aside whether the letters to these entities were demand letters or cease and desist letters or something that would be covered, you've made the separate argument that the letters are – show that there is a relationship to the litigation because these entities have an interest in the litigation. And that seems contradictory to what you just said to Judge Christin in a sense because nobody in those positions was ever involved in the transaction, so how could they be related to it? Your Honor, I'm sorry if my lack of precision has created confusion. There are really two categories. So there are the prospective buyers and facilitators of an interference transaction, and then there are existing lenders, auditors, accountants. Okay, so with respect to the existing lenders, auditors, and accountants, your position is that they haven't proved enough that the transactions were illegal to fall within Flatley? Well, what they're arguing is that the letters are so unequivocally illegal that we don't meet the first prong. And what the courts say in Flatley is it's got to be uncontroverted. Well, actually, I sort of see them as saying that they're part of an illegal scheme, like one part in the illegal scheme. That's what they say for the Ricoh case. But when you look at the torts as pleaded, they're just about the letters. And they have to be just about the letters because the supposed harm is just tied to the recipient of the letter, right? They're saying this title insurance company wouldn't deal with me, this prospective buyer wouldn't deal with me because you said there's an ongoing dispute about ownership and authorization. That's not a scheme. Those claims that are at issue that should be stricken don't relate back, don't involve any of the other controversies between the parties. The Ricoh claim kind of kinched and sinks all of it. And yes, it survives Rule 12, but it's not enough to meet Flatley because it's not uncontroverted. It's not established as a matter of law. It just survived a pleadings challenge. By the way, there was a pleadings challenge, so clearly the criminality is not conceded as it was in Flatley and some of the other cases that show how narrow that exception is. Here it's heavily disputed. It was contested in this matter in connection with Rule 12 motion practice, and it was contested below. But more importantly, the illegality has to be coterminous with the new claim. In Flatley, what was illegal was the letter that gave rise to the claim. In Cohen, what was illegal was this fight over referral fees and a threat to bring a fraudulent claim to the state bar. That was the basis of the claim. They're coterminous. Here the allegations of illegality have nothing to do with the letters themselves. The letters are just notice letters saying we're in active dispute. They say now that the properties had nothing to do with Lincoln Studios, but if you look at the proposed judgment they wrote, it asked the court to conclude and find they could sell the properties, that they had authorization to do the exact transaction. These notice letters were aimed to stop. Thank you, Counsel. You've exceeded your time, and we understand your position. The case just argued is submitted, and we appreciate the arguments from both counsel. We will take about a 10-minute break. All rise.
judges: Wardlaw, Graber, Christen